```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              :    CIVIL ACTION
   JEANETTE CHANCELLOR,       :    NO. 06-1067
                              :
        Plaintiff,            :
                              :
   v.                         :
                              :
   POTTSGROVE SCHOOL          :
   DISTRICT ET AL.,           :
                              :
        Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        JANUARY 7, 2008

At all relevant times, Jeanette Chancellor was a student at a public high school. During her senior year, she had sexual relations numerous times with her 29-year-old male band teacher.

Chancellor brought an action against the School District and the school principal under Title IX and 42 U.S.C. § 1983, respectively. Defendants moved for summary judgment, contending that Chancellor had consented to having sexual relations with her teacher. The Court denied the motion, holding that "a high school student who is assigned to a teacher's class does not have the capacity to welcome that teacher's physical sexual conduct." Chancellor, 501 F. Supp. 2d 695, 708 (E.D. Pa. 2007). Thus, even if the high school student voluntarily participated in sexual activities with the teacher, the sexual

-1-

activity was unwelcome as a matter of law.  In other words, the sexual activity constituted sexual harassment.

For liability to attach to sexual harassment under Title IX, the teacher's conduct must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school." Davis v. Monroe Cty. Bd. of Ed., 526 U.S. 629, 650 (1999).  Whether the sexual harassment by the teacher rises to an actionable level is a question of fact.

Chancellor now moves in limine to exclude at trial all evidence that she consented to having sexual relations with the teacher.  The motion will be denied.

Although, under the circumstances of this case, consent is not a legal defense to a sexual harassment claim under Title IX, Chancellor's voluntary participation in sexual activities with the teacher is admissible for purposes of determining whether the harassment rose to the level of severe, pervasive and objectively offensive.[1]

**I.    BACKGROUND**

A.    Factual Background

In 2003 and 2004, Jeanette Chancellor was a student at

---

[1]    Chancellor's motion in limine (doc. no. 48) also asked the Court to exclude four other categories of evidence.  These categories are dealt with in separate orders.

Pottsgrove High School.  She was a member of the band and was enrolled in several classes taught by Christian Oakes, the band teacher.  In 2003, Chancellor became involved in a sexual relationship with Oakes; the two had sexual intercourse on multiple occasions in 2003 and 2004.  Chancellor was 17 when the relationship began; she turned 18 on February 14, 2004.  The relationship continued until April 2004.

It is undisputed that Chancellor voluntarily participated in the relationship with Oakes.  She does not argue that he physically forced her or threatened her, or offered her special favors, in order to secure her participation in sexual activities with him.

B.   Procedural History

Chancellor brought this suit on March 10, 2006, asserting claims against Pottsgrove School District; Joseph Bender, superintendent of the district; Joyce Wishart, principal of Pottsgrove High School; and Christian Oakes, her band teacher at Pottsgrove.  Bender was dismissed from the case by the agreement of the parties.  On August 8, 2007, the defendants' motions for summary judgment were denied.  Christian Oakes was dismissed from the case on the eve of trial, pursuant to a settlement agreement between the parties.

The claims now remaining are a claim against Pottsgrove

School District under Title IX of the Education Amendment Act of 1972, 20 U.S.C. § 1681 et seq., and a claim against Joyce Wishart, principal of Pottsgrove High School, under 42 U.S.C. § 1983.

## II. DISCUSSION

Chancellor moves that the Court exclude evidence that she consented to engaging in sexual conduct with Oakes because the Court has already held that Chancellor lacked the capacity to consent to such conduct.  This motion will be denied.

1.  <u>Title IX</u>

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  A school district may be liable under Title IX for a teacher's sexual relationship with a student if 1) the school district received federal financial assistance, 2) the student was subjected to discrimination on the basis of sex, and 3) an "appropriate person" 4) had actual notice of, and was deliberately indifferent to, the discrimination. <u>Chancellor</u>, 501 F. Supp. 2d at 704 (citing <u>Gebser v. Lago Vista Ind. Sch. Dist.</u>, 524 U.S. 274, 277 (1998)).

The Supreme Court has held that sexual harassment of a student by a teacher can constitute discrimination on the basis of sex. Gebser, 542 U.S. at. In order to trigger liability under Title IX, the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 650. Thus, to establish discrimination in violation of Title IX, a plaintiff must show: one, that she was subject to sexual harassment; and two, that the conduct was "so severe, pervasive and objectively offensive" as to deprive the plaintiff of educational opportunities or benefits.

      a.   Sexual harassment

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986). "[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit . . . ." Id. In a case involving adults in the workplace, "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." Id.

However, "a high school student who is assigned to a teacher's class does not have the capacity to welcome that teacher's physical sexual conduct."[2]  Chancellor, 501 F. Supp. 2d at 708.  Thus, even if the assigned student voluntarily participates in sexual activities with the teacher, the sexual activities were unwelcome as a matter of law and therefore constitute sexual harassment.

>   b.  "Severe, Pervasive, and Objectively Offensive"

Whether the sexual harassment by the teacher is actionable depends on whether the student can show that the harassment was "so severe, pervasive, and objectively offensive" as to deprive the student of educational benefits or opportunities.

Whether sexual harassment is "severe, pervasive, and objectively offensive" is a question of fact.  Factors that bear on this assessment include the frequency of the offensive conduct; the nature of the unwelcome sexual acts or words, for example, whether the harassment was physical, verbal or both; whether the harassment was merely an offensive utterance; and the relationship between the parties.  "Whether gender-oriented

---

[2] "Assigned" means both required courses in the curriculum as well as electives and extracurricular activities administered by the school.

conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved.'" Davis, 526 U.S. at 651 (internal citations omitted).  "The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity." Id. at 653.  For example, the Supreme Court has stated that teacher-student harassment is more likely to violate Title IX than student-student harassment. Id.

The jury must be provided with an understanding of the nature of the activities between the student and teacher in order to reach a decision of whether the relationship was "sufficiently severe to den[y] the victim[] the equal access to education that Title IX is designed to protect." Davis, 526 U.S. at 652. Whether Chancellor's participation was voluntary, coerced or forcibly compelled is an important component of the nature of the harassment.  Therefore, although Chancellor's consent is not a defense to a sexual harassment claim, her voluntary participation in sexual activity with Oakes will be admissible for purposes of determining whether the harassment rose to the level of "severe, pervasive, and objectively offensive." Davis, 526 U.S. at 650.

Of course, should the facts as alleged in the Complaint - that Chancellor had sexual relations numerous times with her teacher - prove to be so, plaintiff may be entitled to judgment as a matter of law on the issue of whether the harassment was "severe, pervasive, and objectively offensive."

### 2. Section 1983

Chancellor has asserted a claim under 42 U.S.C. § 1983 against Joyce Wishart, who was principal of Pottsgrove High School at the time of Chancellor's relationship with Oakes. Section 1983 provides a means by which citizens may seek redress for the violation of their federal rights by government officials acting under color of state law. Wishart does not contest that she was acting under color of law. Thus, the only question is whether she violated Chancellor's federal rights.

Plaintiff alleges that Oakes violated her Fourth Amendment right to be free from unreasonable seizures and her Fourteenth Amendment due process right to bodily integrity by engaging in sexual conduct with her. See U.S. Const. Am. IV (providing protection from "unreasonable searches and seizures"); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726-27 (3d Cir. 1989) (holding that a student has a Fourteenth Amendment due process right to be free from intrusions of his bodily integrity, including "a right to be free from sexual assaults by his or her

teachers"). She further claims that this violation of her rights was caused by Wishart. Chancellor claims that Wishart caused these violations of her rights by 1) failing to properly supervise Oakes and 2) failing to properly investigate Oakes's conduct. As a supervisory school official, Wishart can be held personally liable for Oakes's violation of Chancellor's rights if Chancellor establishes that: 1) Wishart learned of facts or a pattern of inappropriate sexual behavior by Oakes pointing plainly toward the conclusion that Oakes was sexually abusing Chancellor; 2) Wishart demonstrated deliberate indifference toward the constitutional rights of Chancellor by failing to take action that was obviously necessary to prevent or stop the abuse; and 3) such failure caused a constitutional injury to Chancellor. Chancellor, 501 F. Supp. 2d at 709 (citing Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994)).

Chancellor's voluntary participation in the relationship with Oakes will be of limited relevance to establishing Wishart's supervisory liability under § 1983. The voluntary nature of the relationship is relevant only to the extent that Wishart can show that Chancellor intentionally concealed the relationship from Wishart, thus interfering with Wishart's duty to learn of Oakes's inappropriate behavior. Therefore, evidence of voluntariness is admissible to establish

the state of Wishart's knowledge.[3]  However, as with the claim against the School District, Wishart cannot use Chancellor's consent to the conduct to establish that no constitutional violation took place because Chancellor lacked the capacity to effectively consent.

## III. CONCLUSION

For the foregoing reasons, Chancellor's motion will be granted in part and denied in part.  An appropriate order follows.

---

[3]  Chancellor has withdrawn the claims against Wishart for intentional infliction of emotional distress and for punitive damages.  Therefore, the Court need not further consider whether voluntary participation by plaintiff in sexual activities is a defense to the state law claims.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              :   CIVIL ACTION
JEANETTE CHANCELLOR,          :   NO. 06-1067
                              :
     Plaintiff,               :
                              :
v.                            :
                              :
POTTSGROVE SCHOOL             :
DISTRICT ET AL.,              :
                              :
     Defendants.              :
```

# O R D E R

**AND NOW**, this **7th** day of **January 2008**, it is hereby **ORDERED** that plaintiff's motion in limine (doc. no. 48) is **GRANTED in part and DENIED in part**.  Evidence that Chancellor was a voluntary participant in sexual conduct with Oakes will be admitted for the limited purposes set forth in the preceding memorandum.

**AND IT IS SO ORDERED.**

                                  S/Eduardo C. Robreno
                                  **EDUARDO C. ROBRENO, J.**